**STECKLER GRESHAM COCHRAN PLLC**
Bruce W. Steckler
New York Bar No.: 4863395
Dean Gresham
Texas Bar No. 24027215 (admitted PHV)
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com
dean@stecklerlaw.com


**PAYNE MITCHELL LAW GROUP**
James L. Mitchell (admitted PHV)
Texas State Bar No. 14214300
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214/252-1888 (Telephone)
214/252-1889 (Facsimile)
jim@paynemitchell.com

Attorney for Plaintiffs


## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK


| | |
|---|---|
| Robert Meeker and Amy Meeker, Individually and on Behalf of Carys Meeker, a Minor,<br><br>                            Plaintiffs,<br><br>v.<br><br>Patrick McLaughlin,<br><br>                          Defendant. | **Civil Action No. 1:17-cv-05673-SN**<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MCLAUGHLIN'S MOTION TO DISMISS** |

## Table of Authorities

### CASES

*Accord Farm Credit Bank of Texas v. Guidry*, 110 F.3d 1147 (5th Cir. 1997) .......................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 4, 13

*Banks*, 2003 U.S. Dist. LEXIS 8230 (E.D.N.Y. Mar. 27, 2003) ............................... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544  (2007) ....................................................... 4

*Burr v. Bd. of Cty. Comm'rs*, 491 N.E.2d 1101 (Ohio 1986) ..................................... 14

*Chaidez v. Vangilder*, No. 1:16-cv-1330, 2016 U.S. Dist. LEXIS 69365 at *5
    (N.D. Cal. May 26, 2016) ...................................................................................... 13

*Clemco Indus. v. Commercial Union Ins. Co.*, 665 F. Supp. 816 (N.D. Cal. 1987) .................... 7

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................................... 4

*Coulter v. Microsoft Corp.*, No. 91-cv-3135, 1992 U.S. Dist. LEXIS 22789
    (D.N.J. Jan. 14, 1992) ............................................................................................. 7

*Curley v. AMR Corp.*, 153 F.3d 5 (2nd Cir. 1998) ..................................................... 6

*Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976 (5th Cir. 1985) ..................... 7

*Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752 (2d Cir. 1976) .................... 16

*Gibbs v. Ernst*, 647 A.2d 882 (Pa. 1994) ............................................................ 14, 15

*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010) ........................................................... 6

*In re Microsoft Partner Program Litig.*, No. 1:05-cv-1922, 2006 U.S. Dist.
    LEXIS 30597 (W.D. Wash. May 16, 2006) ............................................................ 7

*James G. v. Caserta*, 332 S.E.2d 872 (W. Va. 1985) .................................................. 9

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ........................ 7

*Liberty Mut. Ins. Co. v. Fairbanks Co.,* 170 F. Supp. 3d 634 (S.D.N.Y. Mar. 22,
    2016) ........................................................................................................................ 6

*Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424 (S.D.N.Y. 2008) ....................... 14

*Matter of Allstate Ins. Co. and Stolarz* , 81 N.Y.2d 219 (1993) ................................ 6

*Nelson v. Krusen*, 678 S.W.2d 918 (Tex. 1984) ......................................................... 9

*Politis v. Noblin*, No. 2:08-cv-2595, 2009 U.S. Dist. LEXIS 104200 (S.D. Tex.
    Nov. 9, 2009) ........................................................................................................... 9

*Reid v. Pierce Cty.*, 961 P.2d 333 (Wash. 1998) ....................................................... 15

*Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933 (5th Cir. 1999) .............. 8

*Ross v. Louise Wise Servs.*, 8 N.Y.3d 478 (2007)................................................ 10, 11

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010)...................................... 5, 12

*Torres v. Miller*, No. 99-CIV.-0580, 1999 WL 714349 (S.D.N.Y. Aug. 27, 1999).................. 16

*Turbo Trucking Co. v. Those Underwriters at Lloyd's London*, 776 F.2d 527 (5th
    Cir. 1985) ................................................................................................................ 9

*Wolford v. Children's Home Society* 17 F. Supp. 2d 577 (D.W.Va. 1998) .............................. 8, 9

*Woodford v. Benedict Cmty. Health Ctr.*, 176 A.D.2d 1115,  575 N.Y.S.2d 415 (1991) ............................................................................................................................... 11

*Zuckerman*, 573 F. Supp. 351, 357 (S.D. Fla. 1983) ................................................................ 14

**OTHER AUTHORITIES**

Alexandra Reeve, *Note: Within Reach: A New Strategy for Regulating American Corporations that Commit Human Rights Abuses Abroad*, 2008 Colum. Bus.. L. Rev. 387 (2008) ......................................................................................................... 10

Blair, *Getting the Whole Truth and Nothing But the Truth: The Limits of Liability For Wrongful Adoption*, 67 Notre Dame L. Rev. 851 .......................................................... 10

Marci J. Blank, *Note: Adoption Nightmares Prompt Judicial Recognition of the Tort of Wrongful Adoption: Will New York Follow Suit?*, 15 Cardozo L. Rev. 1687 (Spring 1994) ..................................................................................................... 10

**RULES**

Fed. R. Civ. P. 15 .................................................................................................................... 4

FED. R. CIV. P. 8 ...................................................................................................................... 4

**TREATISES**

Annot., Wrongful Adoption (1999) 74 A.L.R.5th 1 ................................................................ 8

Charles Wright et al., 5B Federal Practice & Procedure § 1357 (3d ed. 2004) ............................ 7

# I.

## INTRODUCTION

The well-pleaded allegations of Plaintiffs' Complaint sufficiently describe the acts complained of and provide Defendant Patrick McLaughlin ("McLaughlin") with sufficient information to answer the allegations. Nonetheless, McLaughlin moved to dismiss all of Plaintiffs' causes of action for allegedly failing to state a claim on which relief can be granted. With one exception, all of McLaughlin's arguments are unavailing.[1]

Even if the Court believes the Complaint does not contain enough factual allegations specifically against McLaughlin and is inclined to grant his Motion, such dismissal should be without prejudice with leave to amend, which Plaintiffs request the Court grant. McLaughlin has failed to show that affording Plaintiffs leave to re-plead would be futile.[2]

# II.

## FED R. CIV. P. 12(b)(6) STANDARD

Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Federal Rules require the complaint to be a "short and plain statement of the claim showing that the pleader is entitled to relief."[3] The Supreme Court has interpreted this requirement to mean that the complaint must rightly provide "the defendant [with] fair notice of what the…claim is and the grounds upon which it rests."[4] "[D]etailed factual allegations," are

---

[1] Plaintiffs concede that they do not have a cause of action under New York's General Business Law section 349.

[2] Rule 15(a) provides that leave to amend a pleading shall be freely given when justice so requires.[2] According to the Supreme Court, this mandate should be heeded. *Foman v. Davis*, 371 U.S. 178, 182 (1962) *(citation omitted).* In dismissing a complaint for failure to state a claim, the Court should grant leave to amend freely "if it appears at all possible that the plaintiff can correct" the alleged defect. 3 Moore's Federal Practice, P15.10 & n.2 (1983).

[3] FED. R. CIV. P. 8(a)(2).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957)).

unnecessary,[5] but the "complaint must contain sufficient factual matter, *accepted as true*, to state a claim to relief that is plausible on its face."[6] "The plausibility standard is not akin to a *probability* requirement," and dismissal is inappropriate "even where recovery…seems very remote and unlikely."[7] The question is not how credible or dubious the Plaintiff's allegations seem, but rather whether the Plaintiff would be entitled to recover *presuming the facts are as the Plaintiff says they are in the Complaint*.[8] Finally, as the Seventh Circuit noted in its 2010 opinion in *Swanson v. Citibank, N.A.*:

> As we understand it, the Court is saying [in *Iqbal* and *Twombly*] that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen.[9]

### III.

### ARGUMENT AND AUTHORITIES

The well-pleaded allegations of Plaintiffs' Complaint sufficiently describe the acts complained of and provide defendant with sufficient information to answer the allegations.[10] Defendant McLaughlin's arguments to dismissal fail for the following reasons.

**A.  McLaughlin's choice-of-law analysis is fundamentally flawed.**

McLaughlin spuriously argues for dismissal of Plaintiffs' wrongful adoption action—the heart of their Complaint—by claiming that conflicts-of-laws principles require applying Texas

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*).

[6] *Id*.

[7] *Id*.

[8] *See id*.

[9] 614 F.3d 400, 404 (7th Cir. 2010).

[10] *Id*.

substantive law, not New York, and that Texas has rejected wrongful adoption causes of action. Both arguments fail.

> i)      *McLaughlin has not established that a conflict exists between Texas and New York law.*

As McLaughlin acknowledges in his motion, the first question to resolve in determining whether to undertake a choice of law analysis is <u>whether there is an actual conflict of laws</u>.[11] In the absence of a conflict, this Court will apply the law of the substantive law of the forum,[12] which in this case, is obviously New York.

The only backing McLaughlin can muster for the blithe assertion that "Texas Law does *not* recognize a 'Wrongful Adoption' claim"[13] is that he is "*unaware* of any authorities *supporting* a claim for wrongful adoption under Texas law," and "cases that have surveyed jurisdictions do not identify Texas as a state that recognizes" such claims.[14] This is insufficient. Mere ignorance of controlling authorities does *not* establish that Texas has *rejected* the tort, as it is equally plausible that Texas's appellate courts have simply not decided the issue one way or the other yet.

McLaughlin's bizarre attempt to pass off *ignorance* as <u>*evidence*</u> of a jurisdictional split violates the hornbook legal principle that "[f]or the purposes of a motion to dismiss, [courts] construe the pleading in the light *most* favorable to the party opposing the motion, and *resolve all doubts in the pleader's favor*" and against summarily granting dismissals.[15] Thus, because "it is

---

[11] Docket No. 38, p. 9 (citing *Matter of Allstate Ins. Co. and Stolarz* , 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993); *Curley v. AMR Corp.*, 153 F.3d 5 (2nd Cir. 1998).

[12] *See, e.g.*, *Liberty Mut. Ins. Co. v. Fairbanks Co.,* 170 F. Supp. 3d 634, 642 (S.D.N.Y. Mar. 22, 2016).

[13] Doc. #38 at 9–10.

[14] *Id*. (emphasis added).

[15] *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).

well-established that 'under Rule 12(b)(6), the *defendant* has the burden *of showing that no claim has been stated*" and not the other way around, McLaughlin's meager proffer that they have not located definitive Texas authorities is plainly incapable of discharging *his* burden.[16] As Judge Politan of the District of New Jersey aptly explained, in the early stages of litigation "to the extent that the *absence* of case law…*creates any uncertainty*, I must resolve any uncertainties as to the current state of controlling substantive law *in favor of the plaintiffs*."[17] The principle is equally applicable here.

> ii)     *If this Court makes an "Erie guess," it should conclude that Texas would recognize a wrongful-adoption cause of action.*

Although Plaintiffs need not take this analysis any further to defeat McLaughlin's Motion because he failed to discharge his initial 12(b)(6) burden, McLaughlin's argument that Texas has rejected wrongful adoption is even more dubious. When a federal court is sitting in diversity and is faced with an *absence* of state authorities interpreting a cause of action, the federal court is *not* authorized to simply *presume* that the cause of action fails.[18] Rather, the Court must "make its best 'Erie guess' as to how the Supreme Court [of that state] would decide th[e] issue."[19] "In making an '*Erie* guess' [courts] may consult a variety of sources, including dicta in [state] court

---

[16] *In re Microsoft Partner Program Litig.*, No. 1:05-cv-1922, 2006 U.S. Dist. LEXIS 30597 at *18 (W.D. Wash. May 16, 2006) (Pechman, U.S.D.J.) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)) (emphasis added). *See also* Charles Wright et al., 5B Federal Practice & Procedure § 1357 (3d ed. 2004) ("federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists") (collecting cases).

[17] *Coulter v. Microsoft Corp.*, No. 91-cv-3135, 1992 U.S. Dist. LEXIS 22789 at *27 (D.N.J. Jan. 14, 1992) (emphasis added).

[18] *See, e.g., Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976, 993 (5th Cir. 1985).

[19] *Clemco Indus. v. Commercial Union Ins. Co.*, 665 F. Supp. 816, 821 (N.D. Cal. 1987) (citing *Ducre*). *Accord Farm Credit Bank of Texas v. Guidry*, 110 F.3d 1147, 1149 (5th Cir. 1997) (noting that "when state law is silent, we must make an '*Erie* guess' as to how the state supreme court would rule").

decisions, the general rule on the issue, and the rules in other states that [the state] might look to, as well as treatises and law journals."[20]

Plaintiffs will not undertake an exhaustive review of *all* possible interpretive sources—given that McLaughlin did not perform even the most rudimentary analysis. Nevertheless, the key evaluative factors clearly weigh in favor of treating Plaintiffs' claim for wrongful adoption as viable under Texas law. Initially, there is a clear national "trend" across all states tilting towards recognizing wrongful adoption as cause of action.[21] McLaughlin's own cited authorities say as much.

In *Wolford v. Children's Home Society*—which McLaughlin cites only for the proposition that Texas was *not* included as recognizing *or rejecting* wrongful adoption in a citation collecting cases—a federal court in West Virginia was also forced to make an "*Erie* guess" about how the West Virginia Supreme Court would rule.[22] The court observed in no uncertain terms that "[t]his *general trend* towards *recognition* of common law fraud and negligence claims against adoption agencies *militates in favor of finding that West Virginia state courts would likewise recognize such claims*."[23] Absent *conflicting* state authorities—which McLaughlin cannot offer—a national trend or "majority" rule is usually sufficient, particularly at the early stage of litigation.

The Fifth Circuit, which hears almost all appeals from federal courts within Texas (as well as Mississippi and Louisiana) has explained that when it is necessary to surmise how the high court for one of those states would rule: "absent evidence to the contrary, we [should]

---

[20] *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999) (brackets in original, internal citation and quotation marks omitted).

[21] *See*, Annot., Wrongful Adoption (1999) 74 A.L.R.5th 1 [collecting cases])

[22] *Wolford v. Children's Home Society* 17 F. Supp. 2d 577 (D.W.Va. 1998) (cited at Doc. #20 p.7).

[23] *Id.* at 582 (emphasis added).

presume that the [state's] Supreme Court *would adopt the prevailing* rule if called upon to do so."[24] So too here, this Court should presume that "[Texas's] courts would adopt the prevailing rule if called upon[.]"[25]

Additionally, the federal court in *Wolford* also found it persuasive that "West Virginia state courts have *already* extended tort liability to recognize such novel claims as 'wrongful birth'…suggest[ing] that West Virginia state courts would similarly recognize the plaintiffs' [wrongful adoption] tort claims here if confronted with such claims in the first instance."[26] "This type of healthcare liability…[for]…'wrongful birth' claim[s] *was recognized* by the Texas Supreme Court in *Nelson v. Krusen*, which held that 'parents may recover…from a physician who had negligently failed to inform parents of the risk of [certain genetic] impairments."[27] The Texas Supreme Court's "wrongful birth" holding in *Nelson* likewise suggests that Plaintiffs' wrongful adoption claim is viable, as both torts basically touch and concern the same general theory of injury: failure of an information gatekeeper to disclose underlying developmental risks affecting a child that might otherwise have caused the parents—natural or adoptive—to proceed differently given their financial or other limitations. If anything, the fact that Texas has recognized wrongful birth in cases of *negligent* disclosure failures suggests not only that it would recognize a wrongful adoption, but that its construction would be among the *more* expansive of

---

[24] *Turbo Trucking Co. v. Those Underwriters at Lloyd's London*, 776 F.2d 527, 529 (5th Cir. 1985) (making "Erie guess" as to Mississippi law)

[25] *Id.*

[26] *Wolford*, 17 F. Supp. 2d at 582 (citing *James G. v. Caserta*, 332 S.E.2d 872 (W. Va. 1985), for the proposition that West Virginia recognizes wrongful birth claims).

[27] *Politis v. Noblin*, No. 2:08-cv-2595, 2009 U.S. Dist. LEXIS 104200 at *6-7 (S.D. Tex. Nov. 9, 2009) (citing *Nelson v. Krusen*, 678 S.W.2d 918, 919 (Tex. 1984)).

states, encompassing both negligence *and* intentional violations of the duty-to-disclose to adoptive parents.[28]

### iii)    *New York's Interest in This Case Is Greater Than What Defendant Portrays*

While the failure to demonstrate a conflict of law makes it unnecessary to determine which jurisdiction has the most significant relationship to the case, McLaughlin's reasoning on that point is similarly flawed. McLaughlin merely pays lip service to the relevant factors, and tersely overlooks the fact that *all* states and territories have a compelling interest "in preventing its citizens from perpetrating the most base of harms," which certainly includes the callous behavior alleged in the Complaint.[29] And because deterrence of such conduct is one of the main principles animating judicial recognition of wrongful adoption—as noted in *Ross v. Louise Wise Services*, the very authority from the New York Court of Appeals that McLaughlin cites in his motion[30]—New York has a strong interest in *preventing* its non-profit corporations from continuing such practices that likely will affect its residents and residents of numerous other states.[31]

McLaughlin's argument that the New York Court of Appeals only recognizes a cause of action for wrongful adoption "in limited circumstances where an adoption agency is the

---

[28] *See* Marci J. Blank, *Note: Adoption Nightmares Prompt Judicial Recognition of the Tort of Wrongful Adoption: Will New York Follow Suit?*, 15 Cardozo L. Rev. 1687, 1688 (Spring 1994) (explaining that some states also recognize the tort when it sounds in negligence while others require purposeful misconduct).

[29] Alexandra Reeve, *Note: Within Reach: A New Strategy for Regulating American Corporations that Commit Human Rights Abuses Abroad*, 2008 Colum. Bus.. L. Rev. 387, 412 (2008).

[30] Doc. #38 at p.10 (citing *Ross v. Louise Wise Servs.*, 8 N.Y.3d 478, 488 (2007) ("the tort concerned not simply…silence but "the deliberate act of misinforming'" a couple who were deprived of their right to make informed parenting decisions").

[31] *See* Blair, *Getting the Whole Truth and Nothing But the Truth: The Limits of Liability For Wrongful Adoption*, 67 Notre Dame L. Rev. 851 at 878 (a primary rational in jurisdictions recognizing wrongful adoption is "deterring such conduct in the future by adoption intermediaries and thereby avoiding the tragic consequences which have [already] resulted from these practices").

defendant"[32] is spurious and strains the boundaries of good-faith argument. Nothing in *Ross* even remotely suggests that this tort was limited to fraud by adoption agencies. To the contrary, New York's highest court concluded that "plaintiffs have raised a cognizable claim under common-law fraud principles *in the adoption setting*."[33] Of course, McLaughlin does not—and cannot claim that Plaintiffs' claims do not arise out of "the adoption setting." Thus, *McKinney* actually refutes *both* the argument that Starfish cannot be liable and the even more contrived notion that "there is a limited list of parties against which New York Courts have allowed this unique tort to proceed."[34] There is not.

### B.  McLaughlin may not prevail on an affirmative defense in a motion to dismiss.

This Court should also reject the arguments in sections III-C and III-D of McLaughlin's motion, in which he mistakenly suggests that he can prevail on evidence-based affirmative defenses at this stage of the proceeding. Contrary to McLaughlin's tacit representation, the Second and Third Claims in Plaintiffs' amended complaint (for negligence, gross negligence, and negligent misrepresentation) do *not* "contain a cause of action under the New York Not-for-Profit Corporation Law Section 720-a."[35] Not only is this statutory provision never discussed in these sections of Plaintiffs' complaint, the portion of this section on which McLaughlin relies is not the "cause of action," it is the *affirmative defense*.[36] And in order to prevail on this defense, *McLaughlin* has the burden to come forth with *evidence* that, for example, that he served as one of Starfish's directors without compensation. McLaughlin's suggestion that such an admission

---

[32] Doc. #38 at p. 10.

[33] *Ross*, 8 N.Y.3d at 488 (emphasis added).

[34] Doc. #38 at p. 11.

[35] Doc. #38.

[36] *See, e.g.*, *Woodford v. Benedict Cmty. Health Ctr.*, 176 A.D.2d 1115, 1116, 575 N.Y.S.2d 415, 416 (1991).

"is clear from Plaintiffs' complaint" is pure nonsense, and cannot be inferred by any reasonable reading of same.

Although Plaintiffs acknowledge that the Sixth Claim in their amended complaint does suggest that McLaughlin *could* be liable under section 720-a *even if* he were a non-compensated member of the board of a 501(c)(3) organization, it is well established under the Federal Rule 8(d) that a plaintiff may plead inconsistent claims in the alternative. McLaughlin's attempt to use the liberal pleading rules as "evidence" to secure a pre-answer dismissal has no support in either law or logic.

C.   **Plaintiffs' allegations of gross negligence and intentional infliction of emotional distress by McLaughlin are sufficient under the Federal Rules.**

This Court should also reject McLaughlin's arguments in sections III-C, III-F, and III-G of his motion, in which he argues that Plaintiffs' allegations that he engaged in grossly negligent or intentional conduct are insufficient. At the outset, it is important to note that McLaughlin does not deny the Complaints' extensive factual allegations paint a picture of the *overall* deceit collectively prosecuted, McLaughlin simply argues the Complaint is not supported by enough factual details *specific to McLaughlin* to causes of action for gross negligence and intentional infliction of emotional distress.[37] Notably, McLaughlin cites no authority from any court to suggest that a heightened standard of review for pleading such allegations. Accordingly, if Plaintiffs have pleaded "a story that holds together," their allegations are sufficient under Rule 8.[38]

Here, the Complaint not only pleads numerous detailed particulars of McLaughlin's cover-up efforts that were spread out over many *years*, it also alleges in detail (with reference to

---

[37] *See* Doc. #38, pp. 11–12, 14–15.

[38] *Swanson*, 614 F.3d at 404.

*specific* email chains and employees) that Starfish and McLaughlin *knew* they were hiding the truth and *chastised* employees who failed to toe the line on its reprehensible "smile, nod and clap" mantra.[39] The Complaint further alleges Starfish and McLaughlin had engaged in similar tactics with regards to C.M. and another family, and after that adoption fell through deliberately engaged in other conduct like *limiting* Amy Meeker's 2013 visit with C.M. to a brief half-hour to insulate their misdirection from being found out. It strains credulity to suggest that after reading the detailed Complaint that McLaughlin, as a Board member and indeed former *President*, lacks information sufficient to prepare his answer, as it is clear what *conduct* Plaintiffs are alleging and *he* knows the specific role *he* played if any.

Although it does not use the word, when liberally construed, it is clear the Complaint is *alleging* that McLaughlin (and other officers) *knew* of the circumstances giving rise to Plaintiffs' causes of action, whether undertaken by subordinates or other directors.[40] Given McLaughlin's directorship and erstwhile *presidency* with Starfish, the allegation he had actual or constructive knowledge of these tactics which were practiced over multiple years and were a subject of internal discussions among employees has "facial plausibility."[41] "[A]llegations regarding the knowledge of [] other participants and their roles and [] state of mind … can be averred generally."[42] Because corporate "Board[s] of Directors, act[] as a group in its management and [are] responsible for approval" of corporate policies, if a complaint is sufficient as to the

---

[39] Doc. #1 at ¶3.17.

[40] *See Chaidez v. Vangilder*, No. 1:16-cv-1330, 2016 U.S. Dist. LEXIS 69365 at *5 (N.D. Cal. May 26, 2016) (allegations of *knowledge* of wrongful conduct liberally construed).

[41] *Iqbal*, 556 US at 173.

[42] *Banks*, 2003 U.S. Dist. LEXIS 8230 at *16. This case is strikingly similar to *Banks* where plaintiffs alleged a conspiracy to defraud on the basis of material misrepresentations made by a real estate broker, an appraiser, and others. The plaintiffs also alleged that Mindy and Michael Ashley-**with whom plaintiffs had no direct contact whatsoever**-exerted control over the scheme as principals of those defendants that had made the false representations.

organization as a whole, a suit "against the *individual members* of the Board of Directors and [the entity] itself" is viable.[43] Thus, courts have refused to dismiss where the complaint "also allege[s] that [corporate directors/board members]—*with whom plaintiffs had no direct contact whatsoever*—exerted *control* over the scheme *as principals* of those defendants that *had* made the false representations."[44]

McLaughlin's argument regarding the sufficiency of Plaintiffs' IIED allegations fails for the same reason as McLaughlin's attempt to dismiss the Complaint's other tort claims regarding McLaughlin, *i.e.*, Plaintiffs are not required to plead *the* "*precise* role played by each director of a corporat[ion],"[45] and a Director such as McLaughlin may be vicariously liable for *intentional* harm caused by his organization and subordinates if he had actual or constructive knowledge of them, which can be alleged generally.[46]

Notably, McLaughlin has *not* alleged that the general scheme of willful concealment detailed in the Complaint could not possibly support an IIED claim, nor could he. As numerous courts have remarked "it [is] a *travesty of justice*…when deceitful placement of [an] infant, known by [the adoption intermediary] to be at risk…[causes injuries once] the tragic, but hidden realities of the child's infirmities finally c[o]me to light."[47] Starfish's disregard for CM's health needs and efforts to deceive the Meekers despite knowing they "want[ed] to be sure of what

---

[43] *Zuckerman*, 573 F. Supp. 351, 357 (S.D. Fla. 1983); *See also Banks*, 2003 U.S. Dist. LEXIS 8230 at *25 (E.D.N.Y. Mar. 27, 2003) ("[a]lthough [board Secretary's] role in the conspiracy may be limited to this one time appearance, the complaint's allegation that she knew that her role was to conceal" information was sufficient).

[44] *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 460 (S.D.N.Y. 2008)

[45] *Zuckerman*, 573 F. Supp. at 356. *See also* discussion at p.20, *supra* and cases cited therein regarding Plaintiffs' entitlement to flush out in discovery the precise role of individual Directors so long as the Complaint is satisfactory as to Starfish.

[46] *Banks*, 2003 U.S. Dist. LEXIS 8230 at *16.

[47] *Burr v. Bd. of Cty. Comm'rs*, 491 N.E.2d 1101, 1107 (Ohio 1986); *accord Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994) ("it would be a 'travesty of justice' to allow adoption agencies to engage in deceitful and fraudulent conduct with impunity").

they're getting into…"[48] is *precisely* the kind of callous and malevolent behavior "the recitation of [which] to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'"[49] Accordingly courts have, at the pleading stage, reversed dismissal of intentional infliction of emotional distress claims in the wrongful adoption context.[50]

**D.  Plaintiffs' claim for intentional infliction of emotional distress is not time-barred.**

This Court should reject McLaughlin's argument that Plaintiffs' claim for intentional infliction of emotional distress is time barred because it is undisputed that Plaintiffs filed this claim against McLaughlin within the limitations period. As McLaughlin acknowledged in his motion, Plaintiffs adopted C.M. in April 2015 and, therefore, the statute of limitations did not run until April 2016.[51]

Plaintiffs first filed their lawsuit against McLaughlin (and several other out-of-state defendants) in this Court on March 28, 2016 alleging, among others, a claim for intentional infliction of emotional distress against McLaughlin.[52] In October, 2016 the court dismissed the original lawsuit on the basis of improper venue, without prejudice to refiling.[53]

On March 10, 2017, Plaintiffs refiled their suit against the same defendants—including McLaughlin—in the United States District Court for the Western District of Washington.[54] Based on McLaughlin's sworn representation that he was not subject to personal jurisdiction in

---

[48] Doc. #1 at ¶3.20.

[49] *Reid v. Pierce Cty.*, 961 P.2d 333, 337 (Wash. 1998).

[50] *E.g.*, *Gibbs*, 647 A.2d at 886.

[51] Doc. #38 at p. 15.

[52] *Meeker v. Starfish Children's Servs.*, No. 1:16-cv-02263, Doc. #1 (S.D.N.Y. Mar. 28, 2016).

[53] *Id.*, Doc. #58 (S.D.N.Y. Oct. 11, 2016).

[54] *Meeker v. Starfish Children's Servs.*, No. 2:17-cv-00376, Doc. #1 (W.D. Wash. Mar. 10, 2017).

Washington, Plaintiffs filed a Notice of Voluntary Dismissal of McLaughlin in the Washington action,[55] and refiled the present action in this Court.

Plaintiffs respectfully submit that this case presents one in which "rare and exceptional circumstances" justify an equitable tolling of the limitations deadline on this cause of action.[56] Given that the principal purpose of a statute of limitations is to bar stale complaints,[57] that there is no question that Plaintiffs timely filed this cause of action against McLaughlin, and that it was dismissed for reasons unrelated to the merits, this Court should deny McLaughlin's motion to dismiss their IIED claim.

## IV.

## PRAYER FOR RELIEF

Based on the reasoning and citations of authority above, Plaintiffs respectfully request that the Court DENY Michael J. McLaughlin's Motion to Dismiss, or, in the alternative, grant them leave to amend pursuant to Rule 15(a).

Dated: December 7, 2017                                          Respectfully Submitted,


                                                                 */s/ James L. Mitchell*
                                                                 **JAMES L. MITCHELL**
                                                                 TX Bar No. 14214300
                                                                 **PAYNE MITCHELL LAW GROUP**
                                                                 3500 Maple Avenue, Suite 1250
                                                                 Dallas, TX 75219
                                                                 Phone: 214-252-1888
                                                                 Fax: 214-252-1889
                                                                 Jim@PayneMitchell.com
                                                                 Attorney for Plaintiffs

---

[55] *Id.*, Doc. #26 (W.D. Wash. July 28, 2017).

[56] *See, e.g.*, *Torres v. Miller*, No. 99-CIV.-0580, 1999 WL 714349, at *5 (S.D.N.Y. Aug. 27, 1999).

[57] *Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752, 755 (2d Cir. 1976).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has this date been sent to all attorneys of record in the above-styled and numbered matter, said service being effected by e-service of e-filed documents pursuant to LCR 5.

DATED: December 7, 2017


*/s/ James L. Mitchell*
James L. Mitchell